AFFIRMED and Opinion Filed March 21, 2019



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01463-CR

**JESUS GONZALEZ, JR., Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 282nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1312410-S**

## MEMORANDUM OPINION

Before Justices Whitehill, Molberg, and Reichek
Opinion by Justice Whitehill

A jury convicted appellant of continuous sexual abuse of a child and the trial court assessed punishment at twenty-five years in prison. In eight issues, appellant argues that:

(i) the evidence is insufficient to support his conviction;

(ii) the indictment was defective because it alleged an impossible window of time for the offense;

(iii and iv) the court erroneously instructed the jury that it could consider extraneous offenses for character-conformity purposes;

(v) the court should have instructed the jury to disregard a detective's testimony about trying to contact appellant during her investigation;

(vi) the court erred by allowing the detective to testify that she believed the complainant was telling the truth;

(vii) the court erred by allowing the CPS investigator to explain why she believed the complainant recanted; and

(viii) the court erred by admitting the complainant's statement to a SANE nurse.

Finding no reversible error, we affirm the trial court's judgment.

## I.   BACKGROUND

Appellant is the complainant JL's stepfather.  JL provided detailed testimony about how appellant sexually abused her from the time she was six or seven until she was ten.  During the course of her outcries, JL recanted several times.  At trial, she explained that she had done so because she (i) thought her mother wanted her to do so, (ii) was afraid, and (iii) did not want CPS to take her or her siblings away.

After hearing all of the evidence, the jury found appellant guilty of continuous sexual abuse of a child.  The trial court assessed punishment at twenty-five years in prison and entered judgment accordingly.  This appeal followed.

## II.   ANALYSIS

### A.   First Issue:   Do JL's recantings render the evidence insufficient to support the conviction?

Appellant's first issue argues that the evidence is insufficient to support his conviction because no rational factfinder would have found that the essential elements of the offense were proven beyond a reasonable doubt.  Alternatively, appellant argues that because of JL's numerous recantations and "materially shifting stories," no rational jury would have found that appellant committed two or more acts of sexual abuse during a period that was thirty days or more in duration.  As argued, however, appellant focuses on JL's recantings and different stories.  As discussed below, we disagree with appellant's premise that these credibility issues render the

–2–

evidence insufficient. It is the jury's job to assess credibility—not ours. *See Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

### 1. Standard of Review and Applicable Law

We review the sufficiency of the evidence to support a conviction by viewing all of the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

This standard gives full play to the factfinder's responsibility to resolve testimonial conflicts, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* at 319; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). And the factfinder is the sole judge of the evidence's weight and credibility. *See* TEX. CODE CRIM. PROC. art. 38.04; *See Dobbs*, 434 S.W.3d at 170. Accordingly, we presume that the factfinder resolved any conflicting inferences in the verdict's favor and defer to that resolution. *Murray*. 457 S.W.3d at 448–49. Thus, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder's. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray*, 457 S.W.3d at 448.

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Dobbs*, 434 S.W.3d at 170; *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014).

A person commits the offense of continuous sexual abuse of a young child if (i) during a period that is thirty or more days in duration the person commits two or more acts of sexual abuse against one or more victims, and (ii) at the time each act was committed the accused is seventeen

years old or older and the victim is younger than fourteen years old. *See* TEX. PENAL CODE § 21.02(b)(1)-(2).

An "act of sexual abuse" means any act that violates certain enumerated penal laws, including indecency with a child by contact and aggravated sexual assault. TEX. PENAL CODE § 21.02(c)(2),(4).

A person commits indecency with a child by contact if, with a child younger than seventeen years old, the person engages in sexual contact with the child or causes the child to engage in sexual contact. *See* TEX. PENAL CODE § 21.11(a)(1). "Sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: 1) any touching by a person, including touching through the clothing, of the anus or any part of the genitals of a child; or 2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person. TEX. PENAL CODE § 21.11(c)(1)—(2); *cf*. TEX. PENAL CODE § 21.02(c)(2) (excepting touching the breast of a child from the continuous sexual abuse of a child statute).

A person commits aggravated sexual assault if the person intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means or causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, and if the victim is younger than fourteen years of age. *See* TEX. PENAL CODE § 22.021(a)(1)(B)(i), (iii), (2)(B).

The uncorroborated testimony of a child victim alone is sufficient to support a conviction for continuous sexual abuse of a child. TEX. CODE CRIM. PROC. art. 38.07 (a), (b); *Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.). And a child victim's recantation in a sexual abuse case does not automatically render the evidence insufficient. *See Owens v. State*, 381 S.W.3d 696, 709 (Tex. App.—Texarkana 2012, no pet.).

## 2.    The Evidence

JL's family lived several different places from when she was six until she was eleven.  In 2005, the family lived in a converted bedroom in the front of JL's grandmother's house in Carrollton.

JL believed the sexual abuse started when she was six, but she could not remember.  She said that from the time she was six until she was ten appellant would turn her body so that her legs were hanging off of the bed and put his penis on her vagina.

The first specific incident JL described occurred when she was seven.  JL and appellant were driving to the store and he had her put her mouth on his penis and "do oral."

In 2007, the family moved to The Colony.  There, appellant would rub his penis on JL's vagina to make himself ejaculate.

JL also recalled a time when she was in second grade and appellant picked her and her brother up from school.  When they got home, appellant took JL to his room and she "already knew what was gonna happen."  She asked him, "Why do you do this?" and appellant replied, "Because I love you."  Then, appellant took JL's pants off and rubbed his penis on her vagina.

A year later, the family moved back in with JL's grandmother and lived in the "back house."  JL was eight years old.  One day, appellant took off JL's underwear and licked her vagina.  On another day, he "forced his penis" into her "butthole and [she] started bleeding."  JL recalled that she either screamed or started crying.

Six months later, JL was still eight years old when the family moved to a rental house in Carrollton where JL had her own room.  On one occasion during that time, appellant told JL to go to his room after she got home from school.  He took his pants off and showed her how he would masturbate, and put her hand on his penis and showed her how to rub it.  Then he told her to put her head down and lick it, telling her it was "like a lollipop."

During the time at the rental house, appellant made JL suck on his penis twice, and made her touch his penis and masturbate him "too many [times] to know." He would also rub his penis against JL's vagina until he ejaculated.

Six months later, the family moved back in with JL's grandmother in the "front house." JL was nine years old. There, almost every night, appellant would touch her "down there," and put his erect penis on her vagina, masturbate, and ejaculate. Appellant called the sexual abuse "playing."

In 2011, when JL was eleven years old, the family bought a house in Little Elm. Appellant never touched her after they moved to Little Elm. But one day he showed her a message he had written on his phone that said, "Do you want to play"? JL told him no, called her mother and said, "When you get home I need to have a serious talk with you."

When JL's mother got home and asked her what was wrong, JL initially said, "never mind." But then she started crying, and told her mother that appellant had tried to touch her and asked her to have sex with him in a message on his phone. JL didn't tell her about all of the other sexual abuse "that happened in the past."

JL's mother went downstairs and screamed at appellant. Although appellant "acted clueless" and protested "What are you talking about?" she kicked him out of the house. But she let him back in when it started to rain. JL cried all night. Later that week, appellant asked JL to forgive him for the note on the phone.

A week later, JL moved in with her biological father. She stayed there for two or three months until she got in trouble at school for kissing a boy. JL said she had done so because she wanted to see if she could be comfortable "touching . . . or kissing anybody" without seeing appellant's face or thinking about what he had done. She moved back in with her mother in December 2012.

Appellant and JL's mother became active in a small church group led by Marisela and Timothy Rubio. During a meeting in 2013, JL's mother asked Marisela to speak with JL to find out what was going on.

JL told Marisela that "there was more than just the note," but did not tell her everything because, "It was too much to say at that moment." Marisela asked her how many times, and JL just shrugged her shoulders.

Marisela reported to the police what JL told her and also told JL's mother.

The police escorted JL to the Children's Advocacy Center for a forensic interview and exam. During the interview, JL described two specific incidents that occurred when she was in the fourth grade and lived in the "front house," and the phone incident. Joanie Sackett, the SANE nurse conducting the exam recorded JL's history.[1] The exam showed no evidence of injury, which Sackett described as normal when there is a delayed outcry.

JL's mother learned from CPS that JL had alleged sexual abuse, so mother and the children moved out of the Little Elm house. When appellant moved out of the Little Elm house, JL, her mother, and siblings moved back in. JL knew her siblings were sad because their father was not there, and her brother blamed her for appellant's absence. Her mother was crying a lot, and told JL that they were going to lose their home because she couldn't meet their financial needs alone.

By August 2013, JL's mother said she didn't believe JL's allegations. In that same month, she made JL send an email to Brook Busbee, appellant's attorney at the time. The email said, "What I said about my dad is not true."

JL was "mad" and "sad" about the situation she put her family in. She decided she was being "selfish" because telling what happened meant the family would lose so much. So she "took

---

[1] A SANE nurse is a sexual assault nurse examiner.

it back," co-authoring a letter with her mother asking that appellant be allowed supervised visitation. Appellant returned to the house in December 2013.

In March 2014, JL met with school counselor Joseph Brigandi, and told him she was "not feeling comfortable" with appellant living in the house and that she was "scared he was gonna do it again." She said her mother told her to forgive appellant. JL also cried and said her mom blamed her for everything and "My mom chose him over me." Brigandi told JL he had to notify CPS, which upset JL even more.

When JL got home that night her mother was crying because CPS had contacted her. She told JL that CPS "was going to take the kids."

JL returned to Brigandi's office the next day and "took it back." She told him there was no need to contact CPS because appellant had moved out. But by that point, a CPS investigator had arrived at the school to interview JL.

JL told the CPS investigator, Avis Clark, that she had lied to Brigandi; and that appellant was not in the home, "had never touched her," and "didn't do it." She said she claimed sexual abuse because: (i) she and her mother had gotten into a fight, (ii) she didn't want to get in trouble, (iii) she wanted to have a boyfriend; and (iv) she wanted her mother to feel sorry for her.

JL also claimed that she had bribed her siblings to say appellant was living in the home. But that didn't make sense to Clark because JL claimed she bribed them with "an iPod," and "a hundred dollars," rather than with something like a candy bar.

JL denied that her mother was pressuring her to recant, but she mentioned that her mother and sister were crying and she knew they were upset because appellant was not there. Clark thought JL's mother had pressured her to recant because JL's story was so inconsistent with her siblings' story.

A week later, JL's mother took her to see lawyer Busbee. Busbee told JL what would happen to appellant if he was convicted, handed JL the probable cause affidavit from appellant's case, and asked her to underline anything that wasn't true. JL underlined almost the entire document and then wrote and initialed "not true" in the margins.

Busbee's paralegal (who was also JL's aunt) typed an affidavit in which JL recanted. JL signed the affidavit and her aunt notarized it. But JL's mother did not think JL understood what she had signed.

At trial, JL explained that she signed the affidavit because she was scared and she "just wanted a family." She said that she did not want her sisters to not have their dad and that she thought when she signed the affidavit appellant would change and they could go back to normal as a family.

The evidence also showed that JL's mother was not very supportive of JL. For example, the school counselor testified that JL told her that she had been instructed by her mother to forgive appellant. Similarly, the investigating detective said JL's mother did not seem supportive and seemed "kind of cold-hearted." Additionally, investigator Clark opined that JL's relationship with her mother was "rocky" and that JL didn't want to get in trouble.

Timothy Rubio (one of the leaders of the church group the family participated in) visited appellant at the Little Elm house and thought appellant "looked distraught," and "seemed regretful" as they spoke. Appellant told him that, "I regret what happened. I'm really sorry for [JL's] sake . . . It was a mistake." During the conversation, appellant never denied the sexual abuse.

In 2014, appellant wrote a letter to his children saying he was "sorry for everything, especially for our family not being together." He also said, "I'm just a lonely man that lost

everything because of some stupid decision. And I will have to live with this for the rest of my life not being able to make it up or make it right."

### 3. Analysis

The crux of appellant's sufficiency complaint is that JL was not credible because she recanted several times. But this is not a case where the evidence is totally irrational—such as finding that the moon is made of blue cheese. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (appellate court acts as a procedural failsafe against irrational verdicts). A rational jury could conclude, based on the evidence, that JL was telling the truth about the sexual abuse and recanted because she was concerned about the negative consequences for her family, felt pressured to do so because of her mother, and was afraid. Thus, we conclude that the evidence is sufficient to support appellant's conviction. *See Owens*, 381 S.W.3d at 709.

Accordingly, we resolve appellant's first issue against him.

### B. Second Issue: Did the indictment's "on or about" wording render the indictment defective?

Appellant's second issue argues that the indictment's wording foreclosed the State's ability to prove that the abuse was "continuous" over a period of thirty days or more because it alleged that the offense occurred "on or about September 1, 2010 . . . during a period that was 30 days or more in duration." According to appellant, the indictment thus alleged something that was impossible to prove—that acts occurring on one day also occurred during a longer period. Without citing supporting authority, appellant further argues that this defect does not involve a "defect, error, or irregularity of form or substance in [the] indictment" that code of criminal procedure article 1.14(b) waives for lack of an objection before trial.

We agree with the State, however, that appellant's argument concerns an alleged defect in the indictment that is not cognizable on appeal because the defect was not raised before the day on which the trial began:

–10–

> If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding.

TEX. CODE CRIM. PROC. art. 1.14(b); *Teal v. State*, 230 S.W.3d 172, 182 (Tex. Crim. App. 2007).

Appellant insists that he is not arguing about a defect, or irregularity of form or substance in the indictment, but rather, that the time frame wording alleges a different offense than what was intended. But a complaint that the indictment charges the wrong offense must be raised in a written motion to quash filed in the trial court. *See Cruz v. State*, No. 11-17-00008-CR, 2019 WL 386537, at *3 (Tex. App.—Eastland Jan. 31, 2019, no pet. h.) (mem. op. not designated for publication). Likewise, a date defect (of form or substance) must be objected to before trial. *See Ex parte Gibson*, 800 S.W.2d 548, 551 (Tex. Crim. App. 1990).

Because appellant did not raise any of the complained-of defects or irregularities in the court below as article 1.14(b) requires, this issue was not preserved for our review. We thus resolve appellant's second issue against him.

## C. Third and Fourth Issues: Did the court erroneously instruct the jury that it could consider extraneous offenses for character-conformity purposes?

### 1. Standard and Scope of Review

Appellant argues that the court's charge concerning extraneous conduct was erroneous because: (i) it was misleading and confusing; (ii) it did not identify or mention "the alleged offense" or "separate offense"; (iii) it included or suggested potential bases for consideration that were not supported by any evidence; (iv) it instructed the jury to consider the entirety of the sexual abuse that may have occurred as proof of appellant's guilt; and (v) article 38.37 is unconstitutional.

We review charge error by determining first whether error exists, then evaluating the harm caused by any error. *Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017). When a

defendant timely objects to the charge at trial, reversal is required if the reviewing court finds "some harm" to the defendant. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018).

On the other hand, when a defendant does not object to the charge, we review the record for egregious harm. *Sanchez v. State*, 376 S.W.3d 767,775 (Tex. Crim. App. 2012). To establish egregious harm, appellant must show that he has suffered actual, rather than merely theoretical, harm. *Ngo v. State*, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005). Errors that result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory. *Id.* In examining the record for egregious harm, we consider (i) the entire jury charge, (ii) the state of the evidence, including the contested issues and the weight of the probative evidence, (iii) the final arguments of the parties, and (iv) any other relevant information revealed by the record of the trial as a whole. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008).

### 2. Was the instruction proper?

Appellant's first two arguments essentially argue that the instruction improperly allowed the jury to consider extraneous acts as character evidence. We disagree. The charge instructed the jury on the law and was supported by the evidence. The complained-of instruction provided:

> You are instructed that if there is any testimony before you in this case regarding the defendant having committed other crimes, wrongs, or bad acts against the complaining witness in the indictment in this case, you cannot consider such testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other crimes, wrongs or acts, if any, against the complaining witness. You may only consider such evidence for its bearing on relevant matters including the state of mind of the defendant and the child or the previous and subsequent relationship between the defendant and the child, or in determining motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, lack of accident, character of the defendant, or acts performed in conformity with the character of the defendant.

Because an accused must be tried only for the offense for which he is charged and may not be tried for a collateral crime or for being a criminal generally, extraneous offense evidence is

usually not admissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *Stafford v. State,* 813 S.W.2d 503, 506 (Tex. Crim. App. 1991); *see also* TEX. R. EVID. 404(b)(1) (evidence of "a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character"). In prosecutions for crimes against children, however, article 38.37 permits admitting evidence of extraneous offenses under certain circumstances.

This exception exists because society, the legal system, and in particular, the legislature, have recognized that the unique nature of sexual assault crimes justifies admitting extraneous offense evidence, even though traditional notions of due process generally caution against admitting such evidence. *See Jenkins v. State,* 993 S.W.2d 133, 136 (Tex. App.—Tyler 1999, pet. ref'd) ("The special circumstances surrounding the sexual assault of a child victim outweigh normal concerns associated with evidence of extraneous acts."). Child sex offense prosecutors encounter evidentiary problems because they must typically rely on largely uncorroborated testimony of the child victim, making the child's credibility the focal point. *See Belcher v. State*, 474 S.W.3d 840, 845 (Tex. App.—Tyler 2015, no pet.); *see also Harris v. State*, 475 S.W.3d 395, 388–403 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (legislature carved out specific and limited exceptions to prohibition against using extraneous offenses).

Thus, in prosecutions for sexual offenses against children under the age of seventeen, article 38.37, § 1 permits admitting evidence concerning extraneous offenses committed by the defendant against the child:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:
>
> (1) the state of mind of the defendant and the child; and

(2) the previous and subsequent relationship between the defendant and the child.

TEX. CODE CRIM. PROC. art. 38.37, § 1(b).

Section 2(b) then provides that:

Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

TEX. CODE CRIM. PROC. art. 38.37, § 2(b).

Section 2-a provides:

Before evidence described by section 2 may be introduced, the trial judge must:

(1) determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt; and

(2) conduct a hearing out of the presence of the jury for that purpose.

TEX. CODE CRIM. PROC. art. 38.37, § 2-a. This hearing requirement, however, is "subject to the general requirement of preservation, and therefore subject to forfeiture." *Carmichael v. State*, 505 S.W.3d 95, 103 (Tex. App.—San Antonio 2016, pet. ref'd); *see also, Murphy v. State*, No. 01-17-00599-CR, 2018 WL 6378004, at *7 (Tex. App.—Houston [1st Dist.] Dec. 6, 2018, no pet.) (mem. op., not designated for publication).

Here, appellant was tried for continuous sexual abuse of a child under seventeen years of age, which is an offense under chapter 21 of the penal code (thereby triggering article 38.37). Consequently, evidence that appellant committed other crimes, wrongs, or acts against JL was admissible for its bearing on relevant matters, including appellant's and JL's state of mind and their previous and past relationship. TEX. CODE CRIM. PROC. art. 38.37, § 1(b). In addition, evidence that appellant committed separate offenses of indecency with a child, aggravated sexual assault of a child, or an attempt to commit either offense against JL was admissible for any bearing

it had on relevant matters, including appellant's character and acts performed in conformity therewith. TEX. CODE CRIM. PROC. art. 38.37, § 2(b).

The evidence showed that appellant committed aggravated sexual assault against JL in 2010 and aggravated sexual assault and indecency with a child against her in 2010 and 2011. JL also testified about multiple separate offenses from 2007-2010. Appellant did not request any limiting instructions on JL's testimony.[2] A limiting instruction request must be made at the time the evidence is admitted, otherwise, the evidence is admitted for all purposes. *Hammock v. State*, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001). *See* TEX. CODE CRIM. PROC. art. 38.37, § 2-a. Consequently, the extraneous offense evidence was admitted for all purposes and the trial court did not err by giving the 38.37 instruction.[3]

### 3. Is article 38.37 unconstitutional?

Appellant also argues that article 38.37 § 2(b) violates constitutional due process because it deprives an accused of a fair opportunity to defend against a certain charge and permits a finding of guilt based solely on bad character rather than a specific instance of conduct.

Appellant acknowledges that this court has previously held that article 38.37 is constitutional. *See Mayes v. State*, No. 05-16-00490-CR, 2017 WL 2255588, at *18–19 (Tex. App.—Dallas May 23, 2017, pet. ref'd) (mem. op., not designated for publication), *cert. denied*, 139 S. Ct. 77 (2018).

Our sister courts have also uniformly held that the statute is constitutional and have analogized it to Federal Rule of Evidence 414, which allows evidence that a defendant committed "any other child molestation" to be considered "on any matter to which it is relevant" in the

---

[2] The rules of evidence provide that "[i]f the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on request, must restrict the evidence to its proper scope and instruct the jury accordingly. TEX. R. EVID. 105.

[3] Likewise, appellant did not request an admissibility hearing under 38.37 section 2-a, nor does he complain about the absence of such a hearing on appeal. Thus, we do not consider whether there should have been a preliminary admissibility hearing. *See Carmichael*, 505 S.W.3d at 103.

prosecution of child molestation. FED. R. EVID. 414(a); *see Holcomb v. State*, No. 09-16-00198-CR, 2018 WL 651228, at *2 (Tex. App.—Beaumont Jan. 31, 2018, pet. ref'd) (mem. op. on reh'g, not designated for publication); *Buxton v. State*, 526 S.W.3d 666, 685–89 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); *Burke v. State,* No. 04-16-00220-CR, 2017 WL 1902064, at *2 (Tex. App.—San Antonio May 10, 2017, pet. ref'd) (mem. op., not designated for publication); *Carrillo v. State*, No. 08-14-00174-CR, 2016 WL 4447611, at *8–9 (Tex. App.—El Paso Aug. 24, 2016, no pet.) (mem. op., not designated for publication); *Gates v. State*, No. 10-15-00078-CR, 2016 WL 936719, at *4 (Tex. App.—Waco Mar. 10, 2016, pet. ref'd) (mem. op., not designated for publication); *Bezerra v. State*, 485 S.W.3d 133, 139–40 (Tex. App.—Amarillo, pet. ref'd); *Robisheaux v. State*, 483 S.W.3d 205, 209–13 (Tex. App.—Austin 2016, pet. ref'd); *Gusman v. State,* No.—2018 WL 3060213, at * 2 (Tex. App.—Fort Worth June 21, 2018, pet. ref'd).

This result is primarily because the defendant still has the protection of certain procedural safeguards. Specifically, the State must notify the defendant before trial of its intent to use such evidence, and the trial court must hold a hearing outside the jury's presence to determine whether the evidence "will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt." TEX. CODE CRIM. PROC. art. 38.37, § 2-a.

Having previously determined that article 38.37 is constitutional, and because there has been no change in the law, we decline appellant's invitation to revisit the issue in this case. *See MobilVision Imaging Servs., L.L.C. v. LifeCare Hosps. Of N. Tex., L.P.*, 260 S.W.3d 561, 566 (Tex. App.—Dallas 2008, no pet.) ("We may not overrule a prior panel decision of this Court absent an intervening change in the law by the legislature, a higher court, or this Court sitting en banc.").

## 4. Was the instruction misleading and confusing?

Appellant offers several reasons why the instruction was confusing and misleading and therefore erroneous. First, he argues that the State "needed to elect what act it was alleging," because "an indictment can't charge more than one offense," and needed to specify that conduct occurring on specified dates was not at issue.

Both the indictment and the charge, however, alleged only a single offense—continuous sexual abuse of a young child by two different means: (i) penetration of the complainant's female sexual organ by appellant's sexual organ, and (ii) contact between appellant's hand and the genitals of the complainant. The continuous sexual abuse of a child statute creates a single offense that allows the State to seek one conviction for a "series of acts" of sexual abuse with evidence of the means that, during the relevant time period, the defendant committed two or more acts defined in the statute. *Escobar v. State*, No. 05-15-00219-CR, 2016 WL 3474398, at *2 (Tex. App.—Dallas June 17, 2016, pet. ref'd) (mem. op., not designated for publication). Moreover, the statute does not require that the jury agree unanimously on the specific acts of sexual abuse the defendant committed or the exact dates when those acts were committed. *See* TEX. PENAL CODE § 22.02(d); *see also Hernandez v. State*, No. 05-17-00560-CR, 2018 WL 2316026, at *7 (Tex. App.—Dallas May 22, 2018, pet. ref'd) (mem. op., not designated for publication).

The 38.37 instruction, however, pertained to extraneous acts other than the acts (that is, means) for the charged offense. Appellant does not explain, nor do we see how, the 38.37 instruction was confusing because of alleged deficiencies in the indictment, which we previously addressed in the second issue, or the State's failure to elect a single act. Therefore, we reject this aspect of appellant's argument.

Appellant also argues that the instruction was confusing because it included potential bases for consideration that were not involved in the case, such as "preparation, identity, absence of

mistake, and lack of accident." As previously noted, appellant did not request a limiting instruction when the extraneous evidence was admitted. Consequently, the judge was not obligated to limit the use of that evidence in the charge. *See Cathcart v. State*, No. 05-15-01176-CR, 2017 WL 34588, at \*2 (Tex. App.—Dallas Jan. 4, 2017, pet. ref'd) (mem. op., not designated for publication).

Finally, appellant argues that the instruction was misleading because "it did not refer to 'crimes, wrongs, or bad acts other than those alleged in the indictment.'" The instruction at issue reads: "if there is any testimony before you in this case regarding the defendant having committed other crimes, wrongs, or bad acts against the complaining witness **in the indictment in this case** . . . ." (Emphasis added). This instruction is missing the words "other than alleged [in the indictment]." Although the sentence refers to "other crimes," and later refers to "such other crimes, wrongs, or acts," without the omitted qualifying language, the instruction does not clearly refer to acts other than those charged in the indictment. For this reason, the instruction is erroneous.

Although appellant objected to the charge for several reasons, this was not among them.[4] We therefore review the error for egregious harm. *See Sanchez*, 376 S.W.3d at 775.

We begin by considering the entire jury charge. *Id.* at 774. The jury was correctly instructed that the State is not required to prove the exact dates alleged in the indictment but "may prove the offense, if any, to have been committed any date prior to the date of the filing of the indictment . . . ." To this end, the application paragraph read:

> . . . if you believe from the evidence, beyond a reasonable doubt, that the defendant
> . . . on or about 1st day of September 2010 . . . during a period that was 30 or more
> days in duration . . . intentionally or knowingly committed two or more acts of
> sexual abuse against [JL], a child younger than 14 years of age . . . by contact or
> penetration of the complainant's sexual organ by the defendant's sexual organ, or

---

[4] Appellant objected that the instruction: ". . . is unconstitutional. It's a violation of 404 (b). It shifts the burden of proof. It allows the defendant to be prosecuted and convicted based on conformity with character or the defendant's poor character, which is a violation of the Sixth Amendment and due process."

by the contact between the hand of the defendant and the genitals of the complainant with the intent to arouse or gratify the sexual desire of the defendant, then you will find the defendant guilty of the offense of Continuous Sexual Abuse of a Young Child, as charged in the indictment.

The charge clearly identifies the charged offense, the time frame in which it was allegedly committed, and the means by which it was allegedly committed. Because the charge clearly instructed and inquired about the charged offense, it is less likely that the jury would be confused or mislead by the extraneous offense instruction.

The state of the evidence also does not weigh in favor of egregious harm. As we discussed in the first issue, the evidence was sufficient to convict appellant of the charged offense. JL testified that appellant sexually abused her on a number of occasions. The defensive theory was that JL was not credible because she recanted, and the extraneous offense instruction did not affect this argument.

Neither side mentioned "extraneous offenses" or the instruction in closing argument. Instead, the State reminded the jury that the charged offense required proof of two or more acts of sexual abuse during a period that was thirty days or more in duration. The defense emphasized its theory that JL was not credible. Thus, closing argument does not weigh in favor of harm.

There is no other relevant information in the record that is pertinent to our analysis. While the instruction was not the model of clarity, we cannot conclude that appellant suffered actual harm. Accordingly, we resolve appellant's third and fourth issues against him.

**D.      Fifth Issue:  Was an instruction to disregard concerning the investigator's contact with appellant during the investigation required?**

Appellant's fifth issue argues that the trial court erred in refusing to instruct the jury to disregard the police investigator's reference to contacting appellant during her investigation. Referencing post-arrest principles, *see Sanchez v. State*, 707 S.W.2d 575, 578-92 (Tex. Crim. App. 1996), appellant argues that the pre-arrest reference violated appellant's Fifth Amendment right to

be free from compulsory self-incrimination. The record reflects, however, that no instruction was requested and there was no reference to any statements that were made by appellant or whether he refused to answer any questions posed.

When questioning the investigator, the State asked, "Did you speak with anyone else . . . regarding the sexual abuse allegations that [JL] had made"? The investigator responded, "Um, yes. I actually tried to contact the defendant once the forensic interviews were over and made contact. . . ." Appellant's counsel objected and asked to approach the bench.

Appellant's counsel then said, "I'm gonna object to Fifth Amendment. The question and the answer, I'm gonna ask that they be stricken. I'm gonna ask that you instruct the jury. And then I'll move for a mistrial." A lengthy conversation ensued about whether appellant's Fifth Amendment rights were implicated by the specific question posed. The State argued that all the investigator said was that she attempted to contact appellant, but agreed that the questioning needed to stop there. The judge then told the State to tell the witness to be sure not to reference the appellant in any interviews and the State agreed. Then, the judge said, "Sustained."

Appellant's counsel did not request an instruction to disregard or a mistrial. *See Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004) (proper method of pursuing an objection until an adverse ruling is to object, request an instruction to disregard, and move for a mistrial if instruction insufficient). And there is no argument that the alleged error was so offensive or flagrant as to be incurable by an instruction to disregard. *See Wesbrook v. State*, 29 S.W.3d 103, 116 (Tex. Crim. App. 2000). As a result, appellant did not preserve the issue for our review. *See Livingston v. State*, 739 S.W.2d 311, 335–36 (Tex. Crim. App. 1987) (any error could have been cured by an instruction to disregard but was waived by appellant's failure to object and request the instruction). Accordingly, we overrule appellant's fifth issue.

**E.      Sixth Issue:  Was it error to allow the detective's testimony that JL was believable?**

Appellant's sixth issue complains that the trial court erred in allowing testimony from a police investigator that JL was very believable during the forensic interview.  This issue, however, presents nothing for our review.

When the investigator testified that JL was very believable because she provided detail that an eleven year old would not have unless she had experienced "it," defense counsel objected and the trial judge sustained the objection.  Counsel asked that the testimony be stricken and the jury instructed to disregard, and the trial court advised the jury, "members of the panel, you will remember the instructions that the Court provided you the other day regarding the Court's ruling and sustaining objections.  You are not to consider that as evidence."

Because the court sustained the objection and instructed the jury to disregard the evidence, appellant's issue presents no alleged error to review.  *See* TEX. R. APP. P. 33.1.  We thus resolve his sixth issue against him.

**F.      Seventh Issue:  Should the CPS investigator's explanation have been excluded?**

Appellant's seventh issue argues that the trial court erred by allowing Avis Clark, the CPS investigator, to testify that she believed JL had falsely recanted "because of the pressure."  The State agrees that it was error but argues that the error was harmless.  Considering the record as a whole, we agree.

The complained-of testimony was in response to the State's redirect:

**STATE**: So my question to you is, knowing all the pressure that this child was under from everyone in her life, is it unusual for her to recant and say I lied about it? Is that unusual?

**CLARK**: Well, on all the cases I've worked it doesn't happen a lot.  But, yes, I have seen kids recant.

**STATE**: Now, in this particular instance with [J.L.] do you believe that she was not being truthful because of the pressure?

**DEFENSE**: Objection; calls for a legal speculation conclusion and advisory.

**COURT**: State.

**STATE**: She's testified to it, Your Honor, and I'm just trying to clarify why she believed that this child is telling her that she lied. Is it pressure or she thinks that she was lying.

**COURT**: Overruled.

Expert testimony that a particular witness is truthful is inadmissible under TEX. R. EVID. 702. Therefore, an expert witness may not offer a direct opinion on the truthfulness of a child complainant's allegations. *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997). Consequently, the trial court abused its discretion by allowing this testimony. *See Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006) (appellate court reviews a trial court's ruling on the admission of evidence for an abuse of discretion).

The erroneous admission of evidence is nonconstitutional error. *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007). Nonconstitutional error requires reversal only if it affects the substantial rights of the accused. *See* TEX. R. APP. P. 44.2(b); *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). We will not overturn a criminal conviction for nonconstitutional error if, after examining the record as a whole, we have fair assurance the error did not influence the jury or influenced the jury only slightly. *Barshaw*, 342 S.W.3d at 93.

In assessing potential harm, our focus is not on whether the error had a substantial or injurious effect or influence on the jury's verdict. *Id*. at 93–94. We review the entire record to ascertain the wrongfully admitted evidence's effect or influence on the verdict. *See Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). We consider all the evidence that was admitted at trial, the nature of the evidence supporting the verdict, the character of the alleged error, and how the evidence might be considered in connection with other evidence in the case. *Barshaw*, 342 S.W.3d at 94. We also may consider the jury instructions, the parties' theories of the case, closing

–22–

arguments, voir dire, and whether the State emphasized the error. *Id.*; *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).

Here, for several reasons we conclude that appellant has not shown that the error had a substantial and injurious effect or influence in determining the jury's verdict:

First, JL testified in detail about the sexual abuse appellant committed. She also told the SANE nurse about the aggravated sexual assault in the "front house."

Second, Clark's testimony did not pertain to whether JL's sexual abuse allegations were truthful; instead, the testimony concerned the credibility of JL's recantations. But Clark's testimony that she thought JL recanted "because of pressure" was not the only evidence about those circumstances. JL's mother testified that JL knew her siblings were sad that appellant was not home and that her brother blamed her for his absence. JL also knew that her mother was sad and crying a lot.

Third, JL confirmed this testimony and further said that her mother told her they were going to lose their home. The evidence also showed that JL's mother was not very supportive of JL, and JL was concerned about getting in trouble. She said she was "mad" and "sad" about putting her family in this situation and that she felt she was being selfish. Her mother told her CPS was going to take her and her siblings away.

Fourth, in addition to describing the pressure, JL explained why she recanted. She didn't want to go to foster care. She was afraid. She thought her mother wanted her to recant, and she just wanted to have a normal family.

Fifth, the jury also heard evidence concerning appellant that suggested awareness of his guilt. For example, appellant told Timothy Rubio that he regretted what happened and that it was a mistake. The letter appellant wrote to his children said he made "a stupid decision."

Finally, during closing argument, the State argued that JL recanted because of the pressure she was under, and described the evidence about all of that pressure. But the State did not mention Clark's opinion about the veracity of the recantation at all.

Therefore, although Clark's opinion on the matter should not have been allowed, in light of all of the other evidence bearing on the credibility of JL's recanting, as well as the totality of the evidence in the case and the State's lack of emphasis on the erroneously admitted evidence, we cannot conclude that the error influenced the jury's verdict.[5] We thus resolve appellant's seventh issue against him.

## G.  Eighth Issue:  Should JL's statement to the SANE nurse have been excluded?

Appellant's eighth issue argues that JL's statement to the SANE nurse describing aggravated sexual assault in the "front house" should not have been admitted over his hearsay objection. The State responds that the objection was made with several other objections and therefore not preserved and that the statement was made for medical diagnosis or treatment.

Assuming without deciding that the error was preserved and the testimony did not meet the criteria for medical diagnosis or treatment, we hold that JL's testimony (to which there was no objection) describing the same sexual assault cured any error. *See Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (an error in the admission of evidence is cured when the same evidence comes in elsewhere without objection). We thus resolve appellant's eighth issue against him.

---

[5] Although there was some discussion of recantations during voir dire, there was no mention of a third party's opinion on the veracity of a recantation, or any indication that any of the seated jurors had opinions that might have been swayed by Clark's opinion.

### III. Conclusion

Having resolved all of appellant's issues against him, we affirm the trial court's judgment.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

Do Not Publish
Tex. R. App. P. 47
171463F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JESUS GONZALEZ, JR., Appellant

No. 05-17-01463-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1312410-S.
Opinion delivered by Justice Whitehill.
Justices Molberg and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered March 21, 2019